IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| ROSEMARY DUNCAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 2:11-4328-DGK-SSA |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Rosemary Duncan seeks judicial review of the Commissioner of Social Security's denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq.*, and application for supplemental security income (SSI) based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et. seq*. Plaintiff contends she is disabled because of hearing loss and depression.

The Administrative Law Judge ("ALJ") denied Plaintiff's application. He found her hearing loss was a severe impairment but her depression was not because it did not meet the durational requirement and because she had not demonstrated that it limited her ability to work. The ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels, with certain hazard and environmental limitations, and that she could perform past relevant work as a housekeeper and repacker.

After carefully reviewing the administrative record, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

## Procedural and Factual Background

Plaintiff filed her applications for benefits on April 6, 2010 alleging a disability onset date of October 30, 2009. The Commissioner initially denied her application on June 1, 2010. Following a hearing, the ALJ denied Plaintiff's application on April 20, 2011. The Appeals Council denied Plaintiff's request for review on September 20, 2011, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

A summary of the medical record is presented in the parties' briefs and is repeated only to the extent necessary.

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's conclusion. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court may not reverse the Commissioner's decision as long as substantial evidence in the records supports this decision, even if substantial evidence in the record also supports a different result, or if the court might have decided the case differently were it the initial finder of fact. *Id.*

## Analysis

Generally, a federal court's review of the Commissioner's decision to deny an application for benefits is restricted to determining whether the Commissioner's decision is consistent with

the Act, the regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than 12 months, the Commissioner follows a five-step sequential evaluation process.[1]

Plaintiff contends the ALJ erred: (1) by finding that her depression was not a severe impairment; and (2) in assessing her credibility and determining her RFC.[2]

**A.     The ALJ did not err in determining Plaintiff's depression was not a severe impairment.**

At step two of the evaluation process, the ALJ found Plaintiff's bilateral hearing loss was a severe impairment but her depression was not. R. at 15-17. In finding her depression was not severe, the ALJ noted Plaintiff had virtually no treatment history for depression, her diagnosis was based solely on self-reported symptoms, and that no objective medical evidence in the record confirmed her symptoms. R. at 17-18. The ALJ also observed that her depression only mildly restricted her activities of daily living, and there was no evidence in the record that her depression limited her ability to work. R. at 18.

---

[1] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

[2] Plaintiff presents the arguments concerning her RFC and her credibility in separate sections of her brief. Pl.'s Br. at 12, 14. Because these arguments are interrelated, the Court addresses them both in section "B" of its analysis.

Case 2:11-cv-04328-DGK   Document 12   Filed 03/06/13   Page 3 of 9

Plaintiff argues the case should be remanded because the ALJ failed to fully analyze the severity of her depression. Plaintiff contends the ALJ "inexplicably" found that while her depression was currently severely limiting, the durational requirement for this impairment had not been met. Pl.'s Br. at 9.

A severe impairment is an impairment that significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment is not severe when it has no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 404.1521; Social Security Ruling (SSR) 96-3p. The claimant bears the burden of establishing her impairment is severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Although severity is not an onerous requirement to meet, it is also not a toothless standard. *Id.* at 70. The regulations provide that when a mental impairment causes no more than mild limitations in functional areas, including daily activities, social functioning, and concentration, persistence, or pace, it is not severe. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). A severe impairment must also meet a durational requirement of having lasted, or being expected to last, for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909.

The record here supports the ALJ's finding that Plaintiff's depression does not meet the durational requirement for a severe impairment. Despite Plaintiff's self-reported claims of life-long depression, the first documented diagnosis is in November 2010. R. at 17, 286. While a number of Plaintiff's health care providers noted depression in their treatment notes, they were reporting Plaintiff's own statements about her medical history, not their independent observations of her condition. R. at 229, 249, 261, 277. During the few occasions when Plaintiff sought treatment, clinicians generally noted that she showed "no unusual anxiety or evidence of depression" and was "very pleasant," "cooperative," and "alert and fully oriented, in no acute distress." R. at 217, 219, 252. The first documented time she sought any treatment for her depression during the relevant

period was in February 2011, just one month prior to the administrative hearing. R. at 18, 20, 41, 52, 240-47. As the ALJ noted, there are no subsequent treatment records during this period, R. at 18, 20, which suggests Plaintiff's depression was not as limiting as she claimed it to be. *See Page v. Astrue*, 484 F.3d 1040, 1044 (8th Cir. 2007). Although the psychological consultative exam performed in February 2011 by Dr. Patrick Finder, M.S., described Plaintiff's depression as severe at that time, a one-time finding does not establish the 12-month durational requirement. 20 C.F.R. §§ 404.1509, 416.909.

There is also no evidence that Plaintiff's depression significantly limited her ability to work. Plaintiff's told a consultative examiner that her last job ended because she no longer had reliable transportation, not because of her job performance. R. at 282. Nothing in the record suggests her mental health limited her employment opportunities. Furthermore, nothing in the record shows how Plaintiff would fare if she had sought counseling or continued treatment for an extended period. Given that Plaintiff bears the burden of proof, the ALJ properly found her depression was not a severe impairment.

**B.     The ALJ did not err in assessing Plaintiff's credibility and determining her RFC.**

The ALJ found that Plaintiff retained the RFC to perform a full range of work at all exertional levels, but with restrictions of no exposure to loud work environments, no commercial driving, and no exposure to hazards. The ALJ based his opinion largely on a finding that Plaintiff's symptoms were not credible to the extent alleged.

Plaintiff argues that the ALJ did not provide a proper credibility analysis. Pl.'s Br. at 14-16. She also contends the ALJ's RFC determination is not supported by substantial evidence because it provides no limitations for depression or hearing loss and because the ALJ did not state the source for his conclusions concerning her work restrictions. Pl.'s Br. at 12-14. These arguments are without merit.

5

The ALJ did not err in providing limits on Plaintiff's RFC for depression or hearing loss because he rightly found that her statements concerning the effects of these symptoms were not credible to the extent they were inconsistent with the above RFC assessment. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). In considering the credibility of Plaintiff's subjective claims, an ALJ is required to examine: (1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). Here, the ALJ identified a number of acceptable reasons for discounting Plaintiff's claims of disabling symptoms, including the lack of objective medical evidence, Plaintiff's failure to seek medical treatment, and her activities of daily living. R. at 19-20.

The ALJ noted that despite Plaintiff's reports of multiple symptoms, most of her complaints were subjective in nature, and a consultative examiner found no objective evidence to support her complaints of pain and other symptoms. R. at 20, 219-20. Although a claimant's subjective complaints cannot be disregarded solely because they are not fully supported by objective medical evidence, they may be discounted if there are inconsistencies in the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011). A lack of objective medical evidence is one such inconsistency an ALJ may consider in assessing credibility. *Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004).

The ALJ also noted that despite Plaintiff's complaints of disabling impairments, she rarely sought medical treatment and there was a "complete absence of medical records" showing ongoing treatment for any of Plaintiff's alleged symptoms. R. at 18, 20, 39. The ALJ properly discounts a claimant's allegations if she fails to make significant efforts to seek any ameliorative treatment. *Edwards v. Barnhart*, 314 F.3d 964, 967-68 (8th Cir. 2003).

With respect to Plaintiff's hearing, the first time she sought treatment as an adult was in July 2010, when Dr. Sidney Christiansen, M.D., checked her hearing. R. at 227-33, 284. She did not consult anyone about her hearing until the following January, just two months before the administrative hearing, when she complained of hearing loss during a well-woman examination. R. at 45, 249-52. Additionally, although two medical professionals suggested Plaintiff wear a hearing aid, the record does not document any reasonable attempt by her to find one. R. at 249-52, 284. At the administrative hearing, Plaintiff stated that she did not try to get hearing aids because she was allergic to the rubber pieces that insert into the ear, and no alternatives were available because all hearing aids have latex rubber. R. at 46-47. Plaintiff, however, never mentioned this to her medical providers, and there is no objective evidence in the record confirming that she was allergic to rubber, or that she made any effort to find an alternative. Plaintiff's failure to comply with recommended treatment and lack of any effort to seek out alternative remedies undermines her credibility. *Guilliams v. Barnhart,* 393 F.3d 798, 802 (8th Cir. 2005).

Although Plaintiff offered different reasons for failing to seek treatment, these reasons are not persuasive. Plaintiff stated at the hearing that she did not seek treatment because she did not like to be around doctors. R. at 39. But it is Plaintiff's responsibility to furnish medical and other evidence to show she is disabled. 20 C.F.R. §§ 404.1412, 416.912. A claimant is not

exempted from providing evidence because she has personal reasons against medical treatment. 20 C.F.R. §§ 404.1516, 416.926. Plaintiff later stated that there were no records prior to January 2011 because she had no insurance and was unable to get care. R. at 45. But there is no record that Plaintiff sought treatment available to indigents, nor did she choose to forgo smoking cigarettes each day to help finance treatment. R. at 219, 270. These facts cast doubt on her claim that she did not get treatment because it was unavailable. *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999).

The ALJ also noted that Plaintiff's daily activities were inconsistent with her claims of severe limitations. R. at 19-20. Plaintiff was able to clean house, vacuum, wash dishes, do laundry, go to the grocery store, read books, talk on the phone, use the computer, and spend time on Facebook. R. at 19, 56, 187-91. She was able to dress and bathe herself; she had no difficulty providing other self-care such as washing her hair or feeding herself; and she went outside for several hours a day. R. at 20, 188, 190, 201. The ability to perform many daily living activities confirms a claimant is capable of working. *Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000).

Finally, Plaintiff testified at the hearing that she left her job because of mental and physical problems. R. at 45-46. However, she told a consultative examiner she was terminated for absenteeism due to transportation difficulties. R. at 282. The fact that she left a job for reasons other than her medical condition weighs against her credibility. *See Weber v. Barnhart*, 348 F.3d 723, 725 (8th Cir. 2003). The consultative examiner also noted that despite Plaintiff's life-long hearing difficulties, she was able to work successfully for many years. R. at 287. Where a claimant has worked with an impairment for several years, it cannot be considered

8

disabling at present without a showing that there has been a deterioration in that impairment. *Orrick v. Sullivan*, 966 F.2d 368, 370 (8th Cir. 1992).

In sum, although the record indicates Plaintiff has hearing loss and mild depression, the ALJ did not err in finding that Plaintiff's statements concerning her degree of impairment were not credible. Thus, his RFC determination did not need to provide limitations for depression or hearing loss.

The Court is also not convinced that his case should be remanded because the ALJ did not state the source for his conclusions concerning her physical limitations. The Court agrees the ALJ's explanation of Plaintiff's nonexertional limitations, which the ALJ described as "no exposure to loud work environments, no commercial driving, and no exposure to hazards," could have been clearer and more detailed. R. at 19. But this does not warrant remand. At most, this is a deficiency in opinion writing technique which had no bearing on the result and so does not warrant remand. *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008).

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  March 6, 2013 	  /s/ Greg Kays
	GREG KAYS, JUDGE
	UNITED STATES DISTRICT COURT